58   332
60   501

RICHARD B. LEAKE, TRUSTEE, *vs.* THOMAS L. WATSON AND OTHERS.

New Haven & Fairfield Cos., Oct. T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and J. M. HALL, Js.

A trust fund, consisting of railroad stocks and other securities, was held by a testamentary trustee for the benefit of *N*, a daughter of the testator, the income to be paid to her and the remainder to go to her heirs; the will providing that she might, if she deemed it necessary, from time to time receive portions of the principal, not to exceed $1000 a year, nor to exceed in all half of the principal. The trustee and *N* used the trust fund in stock speculations, the defendants acting as their brokers in the matter, and receiving stocks from them for the purpose, charging a commission which they shared with a New York firm of brokers, who were members of the stock exchange, and through whom the purchases and sales were made. The result was a loss of the trust estate. In a suit brought by a trustee for the children of *N*, to recover of the defendants the value of the trust property which they had received and disposed of, it was held—

1. That so far as the defendants sold the stock as mere agents, in good faith, without knowledge, actual or constructive, that other persons interested in the trust were being injured, or that the sale was not for a legitimate object, and had fully accounted, they were not liable. Otherwise if they knew, or were in the circumstances chargeable with knowledge, that the stocks were being sold in violation of the trust.

2. That if the trustee sold the stocks for the purpose of using the proceeds in stock speculations or of permitting *N* so to use them, and the defendants purchased them knowing the purpose, they participated in the breach of trust, and were liable for the stocks received by them. And in the same way were liable if they received the stocks or security and subsequently sold them, using the avails to make good losses on other stocks held by them on margins for the trustee and *N*.

3. That the defendants were bound to inquire as to the ownership of the property, and as the will, which gave to *N* her interest in it, also gave the remainder to her heirs, and could have been found on the records of the probate court, they were chargeable with knowledge of the rights of the heirs.

4. That it was of no consequence, upon the question of notice to the defendants, that there was a doubt as to who would take the remainder, and as to whether the gift over was valid; it being enough that there was a remainder, and that there were possible parties besides *N* who had an interest in the property.

5. That it did not affect the case that the court of probate had distributed the property to "trustees for *N*," such distribution being in terms

made under the will, which gave *N* only a life estate, and the court making no distribution of the remainder.

6. That any property which had been bought and added to the trust fund by a former trustee in the place of trust property sold, and which came into the defendants' hands, stood upon the same ground with original trust property.

Where property is given to a trustee for a certain person for life, with remainder over, the trustee is charged with the duty of safely keeping the property until it is delivered to the remainder-men. But the remainder-men in such a case would not be strictly beneficiaries under the trust.

Where the court of probate is acting upon the acceptance of the resignation of such a trustee and his discharge from the trust, it is not necessary that notice should be given to the remainder-men as parties in interest.

[Argued October 29th,1889—decided February 7th, 1890.]

ACTION by the plaintiff as trustee of certain estate for Georgiana Nichols, under the will of her father Charles Bulkley, against the defendants, to recover the value of sundry stocks and bonds, belonging to the trust estate, which had been received and sold by the defendants as brokers, with alleged knowledge that they were being disposed of in violation of the trust; brought to the Superior Court in Fairfield County. The defendants in their answer averred their ignorance of the existence of the will in question; that the stocks and bonds were received by the defendant Watson as a broker in the regular course of business from the said Georgiana and Elizabeth Bulkley, then trustee, with orders to sell the same in the market in New York city, and that he so sold them in good faith and accounted to them for the proceeds before he had any notice of the plaintiff's claim. The case was heard before *Fenn, J.*, who made the following finding of facts.

Charles Bulkley of Fairfield in this state died in 1875, leaving a will, which was duly probated, and which, after providing for his widow, proceeded as follows:—

" *Fourth.* All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath unto trustees, as hereinafter named, for the uses and purposes hereinafter set forth, as follows:—

" One fifth to be held in trust; and the income, use, inter-

est and improvement thereof to be paid over annually, or in more frequent installments if deemed expedient and convenient by the trustees, unto and for the use and benefit of my daughter, Mary Elizabeth, wife of Isaac Jennings; the remainder to go to her heirs forever; provided that said Mary Elizabeth may, if she shall deem it expedient and necessary, from time to time take and receive portions of the principal, not exceeding in all one-half of such principal, and not to exceed the sum of one thousand dollars in any one year; such portion of the principal to be paid over by the trustees upon notice in writing so to do, and the receipt of said Mary Elizabeth to be a sufficient voucher to the trustees in the premises. Three other parts, of one-fifth each, to be held in trust in the same manner as aforesaid, with the same privilege of receiving portions of the principal, for the use and benefit respectively of my other daughters, Elizabeth Whitney, wife of Rev. Frederick S. Hyde, Georgiana, wife of William B. Nichols, and my aforementioned daughter Catharine, with remainder to their heirs forever."

The remaining fifth was given to trustees for the benefit of the children of a deceased son. The will appointed Elizabeth Bulkley, the wife of the testator, and Oliver Bulkley, his nephew, executors and trustees, with a direction that no bond should be required of them.

The property was afterwards on the 1st day of February, 1876, distributed by order of the probate court, the distribution commencing as follows:—" Estate of Charles Bulkley. The subscribers, distributors on said estate, having been legally sworn, have set out and distributed the same according to law and to the will of the said deceased, as follows." The distribution to Mrs. Nichols was headed as follows:—" We set to Elizabeth Bulkley and Oliver Bulkley, trustees for Georgiana Nichols "—and then followed a list of stocks and bonds, amounting to $44,981.81. All the property thus set out to trustees for Mrs. Nichols was received and taken into possession by Oliver Bulkley, one of the trustees, being received by him as trustee from himself as executor. On the 21st day of August, 1885, Mr. Bulk-

ley rendered his account as trustee to the court of probate, which was accepted, and he was on the same day, upon his application previously made, discharged from the trust. By his account thus rendered it appeared that $17,480.58 in value of the trust property then in his hands was made up of new investments since the commencement of the trust, the rest being the same property that was described in the distribution. New certificates of the stocks had been taken in 1876 in the names of the two trustees. Upon his resignation as trustee Mr. Bulkley surrendered the certificates (with one exception) and procured new ones issued in the name of "Elizabeth Bulkley, trustee for Georgiana Nichols," which were delivered by him to Mrs. Bulkley.

Mr. Bulkley, while acting as trustee, made ten annual payments of $1,000 each, commencing March 9th, 1876, ending January 30th, 1885, to Mrs. Nichols, from the principal of the fund, designed by him and accepted by her as payments of principal under the provisions of the will in reference to the $1,000 per year.

Georgiana Nichols was born in 1838, married in 1857, became single again in 1877, and has since so remained. She has three daughters, the youngest born in 1864, now the wife of Richard P. Leake, the plaintiff trustee, and one son aged fifteen. The defendant Watson resides in Bridgeport, and carries on business there under the name of T. L. Watson & Co. There is in fact no company, the business being his own exclusively. The defendant Smith is not a partner, but only an employee at a fixed salary. Watson is also a partner in the firm of Watson & Gibson, doing business in the city of New York. His business in Bridgeport has been established over twenty years, that in New York about ten years. The business is that of private bankers, brokers and dealers in stocks. The defendant Smith became an employee in May, 1884. He resides in New Haven. He has been the cashier, manager and confidential agent of Watson in the conduct of the Bridgeport business, to the details of which the latter, being occupied with his New York business, has given little attention, except an

oversight of its general conduct. Watson has never been a member of the New York Stock Exchange, but his stock transactions were conducted through a firm called Prince & Whitely, members of the Exchange, having an office in New York with which Watson's Bridgeport office was connected by private wire. Prince & Whitely were the representatives of Watson on the floor of the New York Stock Exchange. In buying and selling stocks for customers Watson charged three sixteenths of one per cent, or eighteen and three quarter dollars for each one hundred shares, of which one sixteenth was his own share, and the remaining two sixteenths was paid to Prince & Whitely, being the established rate paid to members of the exchange on transactions. All of which early became known to Mrs. Nichols, and she also knew that the securities held on margins were from time to time, as the exigencies of the margin account required, sent and transferred in accordance with the custom of such business, by the defendants to Prince & Whitely. The defendant Smith first became personally acquainted with Mrs. Nichols in the early part of September, 1885, when she called at the banking office, and with her mother, Mrs. Bulkley, some two or three weeks later. Watson became acquainted with them in the spring of 1886. In reference to the items in the plaintiff's bill of particulars, and the transactions connected therewith, I find as follows:— [The court then made a detailed statement of the particular transactions with the defendants with regard to the several items of the trust property which came into their hands.]

During the entire time covered by the transactions above detailed, from September, 1885, down to the summer of 1887, both Mrs. Bulkley and Mrs. Nichols had stock accounts with Watson, as a broker, doing business under the name of T. L. Watson & Co., and their stock transactions with him in his Bridgeport office, conducted mainly through Smith acting for him, in buying or selling on margin or speculation, were frequent and numerous. The accounts were kept in their individual names respectively, each having stock or margin accounts in addition to the bank, check

or deposit account of Mrs. Nichols. There was also still another account in the name of Elizabeth Bulkley, trustee for Georgiana Nichols, which was a mixed account, commenced by paying in some cash with which stocks were bought as investment. Then more stocks were bought and the former used as margin to float the latter. There was no other account of this nature with any customer on the defendants' books. All stocks on margin were held on condition that the defendants should have a right to dispose of them without notice whenever the margin was reduced below a stipulated per cent. These stock speculations through the defendants were mainly directed by Mrs. Nichols, both on her own account and that of her mother, who was an aged lady, apparently fully dominated by her. Mrs. Nichols had had a previous experience in stock speculations and relied unduly upon her own judgment and sagacity. Her orders to the defendants were peremptory, and were complied with quite as fully as margins would allow. I do not find that the defendants ever induced or encouraged her to speculate; she needed no such inducement. On the contrary, they in some moderate measure endeavored to dissuade and restrain her. She made some fortunate speculations, but the general result was total disaster, both to the trust fund, which constituted her only individual resource, and to her mother's private means. All these transactions with the trust property were with her full knowledge and approval. All certificates transferred were signed by the trustee in form to correspond with the description in the certificate, and such signature to the power of transfer was generally witnessed by both Mrs. Nichols and by Smith. These powers were signed and witnessed in blank, when the certificates were left in pledge, on margin, or for disposition, and filled out whenever there was occasion to sell out the margin or otherwise dispose of them. In addition to the transactions which appear herein, the defendants received other money and stocks as margin, being the private property of Mrs. Bulkley, and received money as dividends on trust stocks while held, and credited it to Mrs. Nichols, and also paid

out money to and for her, for insurance, living expenses and otherwise, in checks and other ways, so that the above is not a complete statement of all the transactions between the parties; but I find generally that if it is lawful for the defendants to charge Mrs. Nichols for money advanced to or for her personally, or credited on her margin, or on her private account, as a counter-charge or offset for money received by them derived from the sale of trust certificates and property, with the approval or concurrence of Mrs. Bulkley, then, but not otherwise, they have fully accounted for the items hereinbefore specified and set forth.

I find that both the defendants at all times knew that the securities belonged to, and stood in the name of, "Elizabeth Bulkley, Trustee for Georgiana Nichols;" but they did not know, nor did they inquire with regard to, or use any means whatever to ascertain, the origin, nature, terms or limitations of the trust, and neither of them had actual, as distinguished from constructive notice and knowledge, of the existence of the will of Charles Bulkley, or the proceedings of the probate court in reference thereto. They knew where Mrs. Bulkley and Mrs. Nichols resided, which was in the town of Fairfield, and both on one occasion visited them in their house, and on another occasion in their rooms, while temporarily residing at the Atlantic Hotel in Bridgeport. Both ladies, especially Mrs. Nichols, were well known in Bridgeport and Fairfield, and were members of a family of large reputed means. Although the business of T. L. Watson & Co. was very large and their customers numbered by the hundreds, yet the circumstance of having women customers as stock speculators was quite exceptional, though not without a precedent in their business. There was no other such customer at the time these transactions took place. If the law is so that, upon these facts, and as a conclusion therefrom, the defendants can be charged with notice of the facts relating to the trust, its nature and terms, I am of the opinion, and therefore find, that they should be so charged.

I find upon evidence offered by the defendants and ob-

jected to by the plaintiff, but received, if such evidence is admissible, that it is the custom of brokers and bankers, in the financial community where these transactions took place, in dealing with and transferring certificates of stock and other securities, standing in the name of a trustee named in the instrument, with transfer and blank power of attorney accompanying the same, regularly executed by such trustee, and acquiesced in by the person named as beneficiary, to transfer the same without any further information, knowledge or inquiry whatever.

I find that the expectation of life of Mrs. Nichols on November 19th, 1887, was twenty-two years. The value of her life interest in an estate, according to recognized tables of such expectancy, is sixty-three per cent., and she is apparently in good health and vigor.

On November 10th, 1887, Elizabeth Bulkley was removed by the probate court from the trust, and the plaintiff was appointed trustee in her place.

The questions of law arising upon the record, and as to what judgment or decree should be passed, including all questions as to the admissibility of testimony objected to by either party, were reserved for the advice of this court.

*C. R. Ingersoll* and *W. L. Bennett*, for the plaintiff.

1. It is familiar law that a person coming into possession of property bound by a trust, with notice of the trust, holds subject to the trust. *Goddard* v. *Prentice*, 17 Conn., 546. We believe the authorities hereafter quoted establish the proposition that when a person deals with another in regard to property known to be held by the party in a representative capacity, he is put upon inquiry as to the power of the fiduciary and is held to know all that inquiry would have taught him. It is found that the defendants " at all times knew that the securities belonged to and stood in the name of Elizabeth Bulkley, trustee for Georgiana Nichols." They had therefore actual knowledge of the existence of a trust and that the property dealt in was trust property. It is also found that " they did not know nor use any means to as-

certain, the origin, nature, terms or limitations of the trust."
We insist that, having knowledge of the existence of a
trust, they are charged with notice of its "origin, nature,
terms and limitations." *Shaw* v. *Spencer*, 100 Mass., 382;
*Loring* v. *Brodie*, 134 id., 453; *Smith* v. *Burgess*, 133 id.,
511; *Graff* v. *Castleman*, 5 Rand., 195; *Strong* v. *Strauss*,
40 Ohio St., 87; *Sigourney* v. *Munn*, 7 Conn., 324; *Boswell*
v. *Goodwin*, 31 id., 74; *Blatchley* v. *Osborn*, 33 id., 226;
*Duncan* v. *Jaudon*, 15 Wall., 165; *Nat. Bank* v. *Ins. Co.*,
104 U. S. R., 54; *Earl of Sheffield* v. *London Joint Stock
Bank*, L. R., 13 App. Cas., 333. Such being the knowledge
of the defendants, what was the nature of the transactions
proposed? These were, in the one case, to pledge the secur-
ities as margin for the stock speculations of the *cestui que
trust* named in the certificate, and, in the other case, to
make a like pledge for the private speculations of the trus-
tee. Now the pretension by one in a fiduciary capacity to
extraordinary or peculiar powers is by itself sufficient to
arouse suspicion. Wharton on Agency, § 139. And the
fact alone of the offer by Mrs. Bulkley to pledge these
stocks was sufficient to put these defendants on inquiry.
*Anderson* v. *Kissam*, 35 Fed. R., 699; *Merchants' Bank* v.
*Livingston*, 74 N. York, 223; *Deobold* v. *Opperman*, 111 id.,
531; *Smith* v. *Ayer*, 101 U. S. R., 320; *Prall* v. *Hamil*, 28
N. Jer. Eq., 66; *Carter* v. *Bank of Lewiston*, 71 Maine, 453;
*Bayard* v. *Farmers' Bank*, 52 Penn. St., 232. It is not ne-
cessary to accumulate authorities to show that a trustee may
not hazard the trust fund in a trade or business. 1 Perry on
Trusts, § 454; *King* v. *Talbot*, 40 N. York, 76; *Loring* v.
*Brodie*, 134 Mass., 453. The defendants could not have
believed that the pledging of the trust fund for the pro-
posed purpose was within the power of an ordinary trustee.
Unless the trust was a naked trust for Mrs. Nichols alone,
without conditions or limitations, the action could not but
be wrongful. We understand the defendants to assert that
they had the right to assume that the trust was of this ex-
ceptional description, without inquiry, upon the ground that
the certificates named Mrs. Nichols alone as beneficiary, and

showed nothing in regard to conditions or limitations. But the law is clear that they had no right to make that assumption or any assumption without inquiry. *Shaw* v. *Spencer,* 100 Mass., 382. The presence and assent of the *cestui que trust* gives no additional strength to the defendants' position. The point to be ascertained was, as before, whether the trustee had power, even with the consent of the *cestui que trust.* The defendants could not safely assume that even together they had that power. *Deobold* v. *Oppermann,* 111 N. York, 531.

2. The defendants claim that the will must be so construed as to give to Mrs. Nichols an equitable fee in the trust property which she could alienate. There are two bequests, one to the trustees, to pay the income to her, one of the remainder to her heirs. There is need of such a construction that both may stand. It is evident that if the gift for Mrs. Nichols is of the whole interest, the gift of the remainder must fail. The gift for her is not in terms of the entire interest, and it is in terms of that interest which the tenant of a life estate in personal property enjoys, namely, income only. We contend that by the plain terms of the will Mrs. Nichols took but a life interest, with power to take a part of the principal, not to exceed one half, and not to exceed the sum of $1,000 in any one year.

3. The defendants claim that the court of probate distributed the property to trustees for Mrs. Nichols alone. The property was distributed to "Elizabeth Bulkley and Oliver Bulkley, trustees for Georgiana Nichols." It is claimed that this distribution is conclusive upon the heirs, that they are adjudged not to be legatees and devisees, and that in consequence Mrs. Nichols takes the entire interest. We have never been able to comprehend why, even if the heirs are cut off, she took under distribution more than the will gave her. The trustees would still hold subject to all the conditions and limitations of the will, for it was distributed to them according to the will. At the death of Mrs. Nichols they would (her heirs being cut off) hold under a resulting trust for the heirs of the testator. It would still be their

duty and the duty of the plaintiff to hold the property and protect it during her life. But the order of the court of probate has no effect upon the rights of the heirs of Mrs. Nichols. The object of the proceeding was to ascertain what persons named in the will were entitled to receive from the executor the residue in his hands, and to determine what property the executor should deliver to each. The power to do this is conferred upon the probate court by statute. Gen. Stat., § 558. We fail to see how its action in omitting to name a person not entitled to present distribution can have any effect upon his rights.

4. The defendants claim that the trusts created by the will are void, as contravening the statute against perpetuities. [This part of the brief is omitted as the question is left open by the court for further argument.]

5. It was claimed that the court of probate acted without jurisdiction in accepting the resignation of Oliver Bulkley, and that its action was void. If this is so, the effect of it is to leave Mr. Bulkley still trustee. But it has no effect upon the title of the plaintiff, who succeeds Mrs. Bulkley. Appointed trustee by the will, she remained trustee until she was removed, and the plaintiff was appointed in her place. Assuming the resignation to be void, the existing trustees are Oliver Bulkley and the plaintiff, and Mr. Bulkley might properly be a party to the suit. If his presence should be deemed necessary, the court may direct him to be brought in. The action cannot be defeated by the non-joinder. The court may even substitute his name for that of the plaintiff, if it be necessary. Practice Act, §§ 16, 17. But if the court was acting within its jurisdiction in accepting his resignation the defendants cannot attack its decree. Gen. Stat., § 436 ; 1 Perry on Trusts, § 275, and cases cited.

6. Upon the resignation of Oliver Bulkley he had, according to his account, two classes of securities in his hands, to wit, certain securities received by Mrs. Bulkley and himself as trustees from the Bulkley estate, and certain securities obtained by sale and re-investment. It was claimed that the

securities of the latter class were not trust property, and *Noble* v. *Andrews*, 37 Conn., 346, was cited in support of the claim. But the difference between the cases is apparent, the trust there being of real estate. When the subject matter of the gift to trustees is personal, the whole legal interest vests in them without words of limitation. 1 Perry on Trusts, § 318. When the trustees, having the property itself, sold it to *bonâ fide* purchasers, it passed beyond the reach of the *cestui que trust* and remainder-men. They had the right thus to sell, for although there is no express power, the proper administration and protection of the trust requires that they should have the power. Moreover, the directions to the trustee to pay to the *cestui que trust* " portions of the principal not exceeding in all one half of such principal, and not to exceed the sum of $1000 in any one year," necessitates sales of the securities. *Neilson* v. *Lagow*, 12 How., 98; *Chamberlain* v. *Thompson*, 10 Conn., 243; 2 Perry on Trusts, § 412. The modern doctrine of equity, as regards property disposed of by persons in a fiduciary position, is that, whether the disposition of it be rightful or wrongful, the beneficient owner is entitled to the proceeds, whatever be their form, provided only he can identify them. *Nat. Bank* v. *Ins. Co.*, 104 U. S. R., 54; *Knatchbull* v. *Hallett*, 13 Ch. Div., 696; *Whiteley* v. *Learoyd*, 33 id., 347.

7. The court has found, at the request of the defendants, that " the expectation of life of Mrs. Nichols on November 19th, 1887, was twenty-two years," and that " the value of her life interest in an estate, according to recognized tables of such expectancy, is 63 per cent." If it is claimed that the court can apportion to the defendants from the trust estate a gross sum of the value of Mrs. Nichols' life estate, we say,—(1st.) That they can in no case take a greater interest or right than Mrs. Nichols herself had.—(2d.) That she not only had no right as life tenant to insist that her interest should be valued and all paid to her, but it is provided in the will what she may take and in how great instalments, by plain implications forbidding the payment to her of any other portion of the principal.—(3d.) Whether she could

part with her right to the future income, and whether she
has in fact done so, are not questions which arise in this con-
troversy, but must be settled when they come up hereafter
in some proceeding to which Mrs. Nichols herself is a party.

*H. Stoddard* and *G. Stoddard*, for the defendants.

1. The defendants were mere agents, selling the securities
in the open market as brokers. They sold in good faith,
without notice of any *cestui que trust* except Mrs. Nichols.
The securities asserted upon their face that the trust was con-
fined to her, and the conduct of both Mrs. Bulkley and Mrs.
Nichols contained the strongest possible assertion that the
trust was just what the securities declared it to be. Both
knew that the securities were sent to Prince & Whitely,
brokers in New York, for sale. 2 Pomeroy's Eq., § 1048;
1 Perry on Trusts, § 246. The authorities are plain to the
effect that an agent is accountable to his principal only.
" An agent of an executor or testator, or of a trustee, is ac-
countable only to his principal; therefore a broker or other
agent employed by an executor cannot refuse to pay over
money to his principal because it may be misapplied." 2
Perry on Trusts, § 813. " An agent employed by a trustee
is accountable in general to his principal only, and cannot as
a *constructive trustee* be made responsible to the *cestui que
trust*. But of course the rule does not apply where the agent
has *taken an actively fraudulent part and so made himself a
party*." 1 Lewin on Trusts, 191. See also id., 482; 2 id.,
641. In a note to 1 Lewin on Trusts, 482, a case is quoted in
which the House of Lords considered at considerable length
the principles applicable to the liability of bankers and bro-
kers, and came to the conclusion generally that in order to
establish their liability there must be—" 1st, a misapplication
or breach of trust actually intended," and " 2d, *the bankers
must be privy to such intended misapplication or breach of
trust*." The following are some of the leading cases upon
this subject. *Maw* v. *Pearson*, 28 Beav., 196; *Keane* v.
*Robarts*, 4 Mad., 332; *Hardy* v. *Caley*, 33 Beav., 366; *Gray* v.
*Johnson*, L. R., 3 Eng. & Irish App. Cases, 1; *Barnes* v.

*Addy*, L. R., 9 Cha. App., 244. These authorities all concur in the view that business affairs would be impossible unless brokers, bankers and other like agents of trustees are protected when acting in good faith, and that the fact of a breach of trust is immaterial, unless it be shown in addition that the agent acted collusively and fraudulently. Imputed knowledge is discussed in the case of *Goodwin* v. *Am. Nat. Bank*, 48 Conn., 550. The court on page 565 comments upon the cases of *Duncan* v. *Jaudon*, 15 Wall., 176, and *Shaw* v. *Spencer*, 100 Mass., 382, and similar cases, and points out the distinction between cases where the trustee sells or pledges property to pay his private debt, and cases where the trustee, having the legal right, pledges or disposes of property for a purpose apparently proper. And it is held in respect to cases of the latter description that " the title of the pledgee will be perfect even if the executor intended a fraud, if the loan was made for a purpose apparently proper, without knowledge actual or implied of such intention." And in reference to the amount of evidence upon which the courts will impute knowledge, the court says, on page 566 : " Courts are unwilling to decree a forfeiture for fraud upon knowledge imputed to the pledgee, unless the facts in which it is found *force the imputed, in degree, close up to the actual; unless indeed, to borrow a rule of evidence, they exclude all reasonable doubt as to the existence of knowledge.*" Here the defendants did no more than accept the manual possession of the securities, and, by direction of those who apparently had full title, hand them over to Prince & Whitely for sale. It is no answer for the plaintiff to say that these ladies were speculating and that the defendants knew it. They had a perfect right to speculate. *Hatch* v. *Douglas*, 48 Conn., 116.

2. The judgment of the court of probate that Mrs. Nichols is the beneficiary of the trust in question, is conclusive upon all persons, including the plaintiff, until it is reversed. That judgment was made in due course of settlement of the estate. It was the duty of the court to ascertain the devisees and legatees. No other tribunal had jurisdiction of that question nor of the subject matter of the distribution. This

finding is therefore *res adjudicata* by a court of competent jurisdiction concerning a matter confided by law to its jurisdiction. Rev. of 1875, p. 371, sec. 16 ; Gen. Statutes, 1888, § 628 ; *Pinney* v. *Bissell*, 7 Conn., 21 ; *Davenport* v. *Richards*, 16 id., 310 ; *Bissell* v. *Bissell*, 24 id., 241 ; *Brush* v. *Button*, 36 id., 292. That the great chancery powers of our courts of probate upon all matters confided to their jurisdiction are plenary, has been decided in many cases. *Beach* v. *Norton*, 9 Conn., 182 ; *Am. Bible So.* v. *Wetmore*, 17 id., 181 ; *Ashmead's App. from Probate*, 27 id., 241 ; *Mix's App. from Probate*, 35 id., 121 ; *Vail's App. from Probate*, 37 id., 185. It is the common practice for these courts to construe wills for purposes of distribution, and ascertain the rightful and legal heirs and distributees. We refer to a few recent instances, where they have exercised this jurisdiction. *Keeney* v. *Globe Mill Co.*, 39 Conn., 145 ; *Warner's App. from Probate*, id., 253 ; *McKenzie's App. from Probate*, 41 id., 607 ; *Jones's App. from Probate*, 48 id., 60 ; *Clement* v. *Brainerd*, 46 id., 174 ; *Maltby's App. from Probate*, 47 id., 35 ; *Lockwood's App. from Probate*, 55 id., 157 ; *Dickerson's App. from Probate*, id., 223. Under the case of *Keeney* v. *Globe Mills Co.*, if the order of distribution in the case at bar should be appealed from by any of the children of Mrs. Nichols and should be reversed, any person paying value to her and her trustee for the stock will hold it against her children. And the doctrine of imputed or constructive notice claimed by the plaintiff in this case, cannot be reconciled with that case. The recent case of *Lawrence* v. *Security Co.*, 56 Conn., 423, is directly in point. In that case the sum of $4,600, increase of a trust fund which belonged to a life-tenant, was by mistake added to the corpus of the fund and distributed, instead of being handed over to the life-tenant. The court held that this increase " formed no part of the estate to be distributed ; " but that, as it had been mingled with it and distributed, and the probate court had " set its seal of approval to the distribution by its decree affirming it," such action of the distributors and judgment of the court were

conclusive, and thereby the life-tenant had lost title to the property.

3. The gift in remainder to the heirs of the daughters of the testator is too remote, and the children of Mrs. Nichols take nothing under the will; and the limitation over being bad, she takes the fee as heir to her father. [As the case has been remanded to have other parties brought in and this question re-argued, this part of the brief is omitted.]

4. Notice of an unsuspected trust, and undisclosed beneficiary, and a doubtful equity, is not to be imputed to the defendants. The doctrine of constructive notice to a person dealing with trust securities does not extend to cases of doubtful rights. 2 Perry on Trusts, §§ 833, 834. The whole doctrine rests upon the notion that the defendant has failed to do that which an ordinarily prudent man, under the circumstances, would have done, and that, had he made the inquiries that an ordinarily prudent man would have made, he might have ascertained the existence of the alleged right. Either fraud or negligence on the defendant's part is the governing element. *Goodwin* v. *Am. Nat. Bank*, 48 Conn., 550; *Wilson* v. *Wall*, 6 Wall., 83; *Williams* v. *Jackson*, 107 U. S. R., 478. It might well be said to a party, " the papers which were delivered to you plainly show that if you had made inquiries other facts would have come to your knowledge." And so, when a certificate of stock shows upon its face that some undisclosed beneficiary is the real party in interest, equity requires the use of all reasonable diligence to ascertain who the real beneficiary is, and to obtain his consent to the transfer. Such are the cases cited by the plaintiff, of which *Shaw* v. *Spencer*, 100 Mass., 382, is an illustration. The certificate in that case stood in the name of "E. Carter, Trustee," and the court said that the certificate was notice that some other person than E. Carter was the real party in interest and that the defendant ought to have made inquiry. In the present case the certificates stood in the name of "Elizabeth Bulkley, Trustee for Georgiana Nichols." They stood in the name of a trustee for a particular person. There was nothing to suggest inquiry. The

certificate exhausted the subject. *Duncan* v. *Jaudon*, 15 Wall., 165, was the case of a pledge of trust stock standing in the name of a trustee for a named person, for the private debt of the trustee, without the knowledge of the *cestui que trust*. The court held that the defendant ought to have ascertained that the *cestui que trust* authorized the pledge; that is, ought to have done just what the defendants in the case at bar did. Here we not only have the authority of the only beneficiary, but the property in question was sold by her express and explicit orders. Mrs. Nichols had the right to appropriate to her own use every year during her life, $1,000 of the principal, to the extent of half of it. This right on her part involves the power and right of the trustee and Mrs. Nichols to sell the securities. They have the right to determine which securities shall be appropriated as the absolute property of Mrs. Nichols. Could not the defendants justify themselves, unless they knew that Mrs. Nichols and her trustee were taking a larger amount than she had a right thus to appropriate? The doctrine of imputed notice cannot extend to those cases where the trustee and beneficiary can properly dispose of an undefined part of the fund. Could there be any duty upon the defendants to see that Mrs. Nichols and her trustee took no more than the will permits? Had they not the right to assume that they were disposing of the property under the power contained in the will? It is to be observed that Mrs. Nichols not only had the right to receive $1,000 per year for all the years that had expired since the testator's death, but the right to anticipate her annual income, if the trustee consented thereto. This being so there can be no recovery in this case until the death of Mrs. Nichols, for the defendants are subrogated to her rights in the premises. It is further to be considered, in connection with this question of imputed knowledge, that Oliver Bulkley, when trustee, and long before the transactions in question, had sold a great part of the original securities and mingled the proceeds with other trust funds; and then, out of the general fund, had purchased other securities. These new securities were in fact never the property of the

estate, but were bought by Mr. Bulkley, and taken in his name and in the name of Mrs. Bulkley, as trustees for Mrs. Nichols. Had the defendants investigated this matter and obtained all the information that an exhaustive trial has afforded, they would have found not only that Mrs. Nichols was the sole beneficiary, but that in regard to $17,480.58 in value of the securities, there was nothing to indicate that they were a portion of that testamentary fund.

5. The plaintiff is not a trustee for the heirs of Mrs. Nichols. Under the will the remainder never was in trust. The trusteeship attaches solely to the life estate of the daughters, while the heirs receive an absolute title in fee simple upon the death of the daughters respectively. This is so by the express provisions of the will as well as by the authority of decided cases. The point is settled in this state by the case of *Noble* v. *Andrews*, 37 Conn., 346.

6. If there was a breach of trust, the defendants did no act except in good faith and by the express direction of Mrs. Nichols. It follows that the plaintiff, as trustee for her, has no standing in a court either of law or equity to recover of these defendants; and that, as against the plaintiff representing the heirs of Mrs. Nichols, the defendants are subrogated to all her rights in the fund, including her life use and right to appropriate the $1,000 per year. The active concurrence of the *cestui que trust* in a breach of trust bars his right of complaint. 1 Perry on Trusts, § 467. "If trustees make an improper investment with the knowledge, assent and acquiescence, or at the request of the *cestui que trust*, they cannot be held to make good the loss if one happens. 2 Perry on Trusts, § 849. In the recent case of *Evans* v. *Berry*, 37 Ch. Div., 329, COLTON, L. J., said:—" If a person knowing that a trustee is distributing a settled fund, consents to and is active in the distribution, he cannot afterwards, if he finds that he is interested under the trusts of the settlement, turn around against the trustee and say:— ' That sum, in the division of which I concurred, ought to be still held by you: therefore I call upon you to make it good.' * * * A court of equity ought not to sanction any

such claim, even although the claimant did not at the time of the distribution know that he was interested, and although he did not at the time know that the division was a breach of trust." See also *Fyler* v. *Fyler*, 3 Beav., 555 ; 2 White & Tudor's Lead. Cases in Eq., note to *Brice* v. *Stokes*. Mrs. Nichols directed the breach of trust, if any, and received the benefit of it. If the defendants are liable to other beneficiaries her trust estate is liable to a recoupment of the damages out of her interest. *Raby* v. *Ridehalgh*, 7 De Gex, M. & G., 104.

7. If the heirs of Mrs. Nichols have an interest in this property, the plaintiff Leake is not the proper plaintiff, and Oliver Bulkley is still trustee, and liable as such trustee to account to the heirs for such securities. It is true that Mr. Bulkley has undertaken to resign his trust, but, as heretofore pointed out, none of the children of Mrs. Nichols were parties to that attempted resignation ; and the probate court was wholly without jurisdiction as to those children to accept the resignation. Now if this trust is for the children of Mrs. Nichols, it follows that Mr. Bulkley knew of his trust for them, and, knowing it, undertook it. He knew when he made his resignation that these beneficiaries were not notified, and it was his plain duty to continue the trust until he was legally relieved therefrom. Under these circumstances equity will not hold an agent of the trustees liable until the heirs have exhausted their remedy against the trustees. It is inequitable in the highest degree that a broker, an agent of a trustee, acting in good faith, without actual knowledge of the trust, should be held liable, so long as the trustee, who had actual knowledge, is amply able to make good the trust fund.

CARPENTER, J. Counsel for the respective parties have argued this case upon distinct and widely different theories ; —for the defendants, on the theory that they were merely agents; for the plaintiff, on the theory that the defendants were purchasers or pledgees. Each party, in his chosen position, is strongly intrenched. Grant his premises, and

his position is well nigh impregnable; grant the premises of both, were it possible, and a decision of the case would be very difficult. But both cannot be right. The defendants cannot be entitled to the immunities of agents and at the same time liable as purchasers.

Our first inquiry then is, were they purchasers or agents? So far as they sold the securities as mere agents, in good faith, without knowledge, actual or constructive, that other persons interested in the trust were being prejudiced; in other words, so long as they did not knowingly participate in a breach of the trust, and have fully accounted, they are not liable. In that case they conveyed no title of their own, but only such title as the principal could convey. The principal and the purchasers were the contracting parties. For the purposes of re-investment, and of paying Mrs. Nichols such portions of the principal as she might be entitled to, Mrs. Bulkley as trustee had a right to sell, and the defendants might safely act as her agents for that purpose. If she sold for other purposes, in violation of the trust, with the defendants' knowledge, even though they may have sold as agents, still we think they are liable.

If Mrs. Bulkley sold the trust estate for the purpose of using the proceeds in stock speculations, or of permitting Mrs. Nichols so to use them, it was a clear breach of trust. If the defendants were the purchasers, knowing the purpose, they participated in the breach of trust. If they were holding stocks or other securities on margins for Mrs. Bulkley or Mrs. Nichols, or both, and received the trust estate as security, and subsequently sold it, using the avails to make good the losses, their liability cannot be questioned.

So long as trust property improperly sold can be traced and identified, the holder taking it with knowledge, it remains trust property. When it is sold pursuant to the terms of the trust, or apparently so, and the purchaser takes it in good faith, he takes it freed from the trust. In this case the finding shows that most of the property passed from the trustee to the defendants as trust property, in gross violation of the trust, with the defendants' full knowledge. We say

with the defendants' full knowledge, because the defendants, knowing that it was trust property, were put upon inquiry, and the law imputes to them such knowledge as they would have obtained had they made inquiry. The trust, its terms, conditions and limitations, were matters of record. Inquiry, properly directed, would have brought to them full knowledge as to the origin and nature of the trust, and that other parties besides Mrs. Bulkley and Mrs. Nichols were interested in it. They had no moral or equitable right to assume, as they manifestly did, that Mrs. Nichols was the owner of the entire beneficial interest. They knew, or were bound to know, that her interest was only for life; consequently that at her death the trust would cease and that the whole estate would pass into other hands.

That the defendants participated in the breach of trust can admit of no doubt. They knew that Mrs. Bulkley and Mrs. Nichols were using the property in hazardous business —stock speculations; that they themselves were taking the only certain profits, their commissions, while doubtful profits, almost certain losses, and probably complete disaster in the end, were the perquisites of the other party.

It seems very clear to us that the defendants are liable for the trust property, if any, now in their hands, and for the avails of that which they have disposed of, less the amount which appears to have been used for the legitimate purposes of the trust.

We will consider more in detail some of the objections raised by the defendants.

1. They contend that under the circumstances no constructive notice of an unknown and unsuspected trust can be made the basis of an action. Here doubtless they refer to the interest of the remainder-men. The defendants, knowing that the property with which they were dealing was trust property, were bound to inquire and ascertain the nature and extent of the trust. Inquiry would have informed them that the same instrument which created the trust in favor of Mrs. Nichols, gave the remainder to her heirs at law. It matters not, so far as the question of no-

tice is concerned, whether the gift over is valid or void. It is enough that there are possible parties who have an interest in the property besides Mrs. Bulkley and Mrs. Nichols. As that fact clearly appears on the face of the will, the trust is neither unknown nor unsuspected.

2. It is insisted that the action of the court of probate in distributing to trustees in trust for Mrs. Nichols is conclusive that she is the sole beneficiary. It is conclusive as to the property constituting the trust estate, but it is not conclusive as to the parties interested in the estate. The distribution is in terms made under the will, which gave Mrs. Nichols only a life estate. A life estate is necessarily followed by a remainder, and the will disposes of the remainder. The court of probate makes no distribution of the remainder.

3. That the equity, if any, of the plaintiff, or any other possible beneficiary, was not only secret, unknown and unsuspected, but was at least so doubtful that no implied or constructive notice can be imputed to the defendants. There is no doubt or uncertainty as to the equities of the reversioners. There may be a question as to who they are, but that is not such a doubt as will justify the application of the rule invoked.

4. It appears that Oliver Bulkley, while he was trustee, sold portions of the various trusts which he held and mingled the avails in one common fund. With a part of this fund he purchased other property, taking the title in himself and Elizabeth Bulkley as trustees for Mrs. Nichols. The defendants claim that they are not liable for any of that property which came into their hands. That cannot be so. Any property purchased by the trustees to take the place of that sold by them is trust estate, so far as the defendants are concerned.

5. It is further contended that the plaintiff is not trustee for the heirs of Mrs. Nichols; that the remainder never was in trust; that the trust was created for the daughters alone, and that the heirs receive a title in fee. But the trust attaches to the property and continues until the property is delivered to the remainder-men. The trustees are charge-

able with the duty of safely keeping the property until then. The law undertakes that that duty shall be performed. If a trustee proves unfaithful he is removed, and another appointed, who is clothed with the necessary powers to maintain the integrity of the trust. Therefore the plaintiff's right to recover does not depend upon Mrs. Nichols's interest in the property.

6. The last objection we care to consider is, that as no notice was given to the children of Mrs. Nichols of the resignation of Oliver Bulkley, that resignation, and the action of the probate court in accepting the same and in appointing another trustee, are inoperative so far as the trust relates to the heirs; that to that extent Oliver Bulkley is still trustee, and legally responsible; and that the defendants cannot be held responsible until it is demonstrated that he cannot make the fund good.

We do not think that the heirs were beneficiaries in such a sense that notice to them was necessary. The express or principal trust will terminate on the death of Mrs. Nichols. The resulting trust will enable the trustees to hold the property until it can be delivered to the heirs. Strictly speaking, the latter could not and did not exist during the trusteeship of Oliver Bulkley, and cannot come into existence during the lifetime of Mrs. Nichols. It is difficult therefore to see how he could have been regarded as trustee for the heirs. It is doubtless true that if he had been guilty of wasting the trust estate he would be liable, either to his successor or to the heirs; but there can be no justice in holding him liable for the squandering of the estate by his successor.

It is the contention of the defendants that there should be no judgment against them in the present proceeding, even if they applied the proceeds of sales of trust shares upon their account against Mrs. Nichols in her own name, for the reason that these shares were her absolute property; that the gifts in remainder by the testator to the heirs of his daughters respectively are void by force of the statute against perpetuities; and that therefore the daughters took the fee

in such shares as were put under the several trusts for their benefit.

It is the further contention of the defendants that Mrs. Nichols requested them to sell the trust shares and apply the proceeds for her sole use and benefit, upon their account against her for the purchase of shares upon margins for her profit, and that, so far forth as that may have been done, the corpus of the fund has been paid to and consumed by her; and that, to the extent to which she was such absolute owner because of the invalidity of the remainder-over, the defendants are to be protected by a court of equity against a judgment compelling them to make a payment to the fund which by any possibility should enure solely to her benefit.

These claims upon the part of the defendants virtually call for the judicial interpretation of the will of Charles Bulkley; for a determination of the question as to the validity of the several remainders-over; of the question to what extent, if to any, Mrs. Nichols was the absolute owner of the shares which were for her use and upon her request taken from under the trust.

That these questions may be properly considered and finally determined, it is deemed best to remand this case, reserved for our consideration, for the purpose of giving opportunity to these defendants, if they may choose to avail themselves of it, by bill in the nature of interpleader or cross-bill, to summon into court Mrs. Nichols and the other children of Charles Bulkley, deceased, and the heirs of each of them, and make them parties, so far as they may choose to be heard, and thus obtain a judicial construction of the will in question, to the end that the measure of right in Mrs. Nichols in the shares set apart in trust for her may be determined, and all questions presented by the respective parties may have final determination in one proceeding.

In this opinion the other judges concurred.