IN RE JAMES MITCHELL'S WILL, CHARLES W. MITCHELL AND MINERVA E. PARKER, APPELLANTS.   F. W. BLANCHARD, TRUSTEE.

May Term, 1901.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed March 10, 1902.

*Trust—Liability of trustee—Trustee de son tort.*

A testator devised certain premises to a son and daughter during their lives, remainder to their heirs.   The life tenants, together with

testator's other heirs, executed a warranty deed of the premises in consideration of a fund to be held for their benefit under the will. The income from the fund was paid to the life tenants annually until Blanchard was appointed trustee by the probate court. The premises were finally conveyed to the trustee, who thereupon released the fund. *Held,* (1) that the trustee was not chargeable with this fund, it being the avails of the life estate only; (2) that he was not liable as a trustee *de son tort* for releasing the fund, since the trust did not attach to it.

APPEAL from Probate Court, District of Windsor. Heard on a commissioner's report and exceptions thereto, at the December Term, 1900, Windsor County, *Start,* J., presiding. Judgment, *pro forma,* that the trustee was chargeable with the fund in question. The trustee excepted.

*J. C. Enright, E. R. Buck* and *William Batchelder* for the trustee.

The commissioner finds that the trustee acted in good faith. It is the duty of the court to sustain his action in the absence of negligence on his part. 2 Beach on Trusts and Trustees, 1120 and cases.

The conveyance by the life tenants and the heirs of the testator, carried only their interest. The interest of the remainder-men was unaffected. *Adams* v. *Ross,* 30 N. J. L. 513. The life tenants could only dispose of the property for the term of their lives and the life of the survivor. The interest of the remainder-men could only be conveyed by the trustee and then only on application to and leave by the Probate Court.

The trustee could only take the real estate. Beach on Trusts, 491; Underhill on Trusts, 220.

The letter from Judge Henry was admissible as bearing on the good faith of the trustee.

*Gilbert A. Davis* for the appellants.

The letter from Judge Henry was inadmissible. It was mere expression of opinion. All Judge Henry could do was to appoint a trustee. The law then prescribed his duty. Even if the letter was admissible on the question of good faith, the commissioner has not reported that it was not considered and weighed on both aspects of the case. It did not absolve the trustee from doing his duty. 'It was his duty to investigate before acting; by due diligence he could have recovered the $1,000. He is therefore chargeable with it. 2 Pom. Eq. Jur. s. 1070; *Mansfield* v. *Atwood*, 84 Ill. 497; *Foot* v. *McPherson*, 98 Ill. 496.

Charles and Minerva had wisely conveyed their interest in this homestead and established a fund which yielded $60· per year. They had a right to do this. The will provides that at their decease "the land or the avails thereof" is to be divided between their heirs.

TYLER, J. The case shows that James Mitchell died in the year 1862, leaving a will, which was probated March 31 of that year, by which he devised his homestead of twenty acres of land in Weathersfield to his son, Charles, and his daughter, Minerva, during their lives, and provided that at the decease of either, the survivor should have the use of it during life, and that at the decease of both, the premises, or the avails thereof, should be equally divided among their legal heirs. He also devised to them certain other lots of land called the "Dean Lots."

Upon proof of the will L. F. Cabot was appointed executor, but no action was taken by the Probate Court in respect to the homestead until the appointment of Blanchard trustee, July 7, 1897. April 29, 1873, Charles and Minerva, joined by all the testator's other living heirs, executed a warranty deed of the homestead and another tract called the "Polly Downer Land," to Henry E. Mitchell, for $1,500, of

which sum $500 was accounted for by Cabot, executor, as received from the sale of the latter tract, and was duly distributed, with other assets, under a decree of the Probate Court. The remaining $1,000 was paid by Henry E. by giving his two promissory notes of $500 each to L. F. Cabot and Samuel H. Adams, respectively, securing the payment by a mortgage upon the land so conveyed.

The *habendum* in the mortgage reads: "To have and to hold the above granted and bargained premises * * * * to the said Adams and Cabot, * * * * in trust for the persons interested and hereinafter specified." The condition of the mortgage is to pay the interest on the two notes annually for the benefit of Charles and Minerva during their lives, and at their decease to pay the $1,000 to the trustee for the persons entitled to it.

The apparent purpose of the parties in the sale of the land to Mitchell and in taking a mortgage from him was to secure the payment of an annuity to Charles and Minerva during their lives, and payment of the principal to a trustee for the persons entitled to the same at their decease.

Cabot and Adams, August 11, 1884, discharged the mortgage, upon the notes being paid, and on the same day Adams paid the $500 in his hands to one Parker, the husband of Minerva, who invested it in a house which he and his wife occupied until April 1, 1886, when he sold it and passed $500 to Henry E., who retained it and paid the interest annually to Minerva until April 1, 1897. Cabot paid the interest annually on the $500 held by him to Lavinia Swan, to whom Charles had mortgaged his interest, until April 1, 1894, when she died; and July 31, 1897, he paid the $500 to Henry E., who, on the same day, paid it to Joseph H. Adams.

The trustees thus gave Charles and Minerva the benefit of the income until the time the principal was paid by Mitchell,

and afterwards until near the time of Blanchard's appointment. At that time Mitchell held one sum of ·$500 and Joseph H. Adams the other sum, and Adams also held a deed of the homestead, but soon after conveyed his interest to Mitchell.

Mitchell, by a quit-claim deed, August 2, 1897, conveyed his interest to the trustee, Blanchard, having taken his title from Joseph H. Adams into whose hands it came after sundry conveyances. Following the description of the land it is recited that:

"Fred W. Blanchard, having been appointed trustee under the will of James Mitchell, hereby accepts this deed of said land in lieu of five hundred dollars heretofore held in trust by L. F. Cabot, and five hundred dollars held in trust by Henry E. Mitchell, as security that they would forfeit said money to the legally appointed trustee under said will or the legal heirs of Charles Mitchell and Minerva Mitchell, or would return to him or them the above described land; and said L. F. Cabot and Henry E. Mitchell are hereby discharged from the payment of said sum of five hundred dollars each."

When Adams received the $500 from Cabot he gave him a receipt which stated that it was money left with him in trust by Charles Mitchell, Lavinia Swan and Henry E. Mitchell, as security that Henry E. "would return the James Mitchell land of twenty acres * * * * left in trust for Charles and Minerva Mitchell, said money having been paid to me in discharge of said Cabot from said trust, and for consideration that I return and deed to Fred W. Blanchard, trustee of said trust, the land described in the will." On the same day Adams deeded the homestead and other land described to Henry E., who wrote on the back of the receipt given by Adams to Cabot a statement that he had paid Cabot the trust money to take the place of the homestead land which he thereby agreed

to convey to Blanchard, trustee, appointed by the Probate Court to take charge of said land; and it is found that the $500 was part consideration paid Adams for the premises conveyed to Mitchell. Directly after this Henry E. conveyed the land to Blanchard, who took possession of the twenty acres as the premises in trust under the will. On settlement of his account as trustee, in the Probate Court, the appellants objected to his having taken the real estate as the trust property, and insisted that he should have obtained the $1,000 in money, which was in the hands of Mitchell and Cabot when the trustee was appointed, and in the hands of Mitchell and Adams at the time of the conveyance to Blanchard.

The appellants took by the will a life estate in the twenty acres, and at their decease it was to pass to their legal heirs in fee. They, with the other heirs of James Mitchell, undertook, by their deed of April 29, 1873, to convey the land in fee, but that deed only operated to convey the life estate of Charles and Minerva, the other grantors being the heirs of the testator. The remainder over, after the termination of the life estate, passed by the will to the heirs of the life tenants, and it does not appear that these heirs and the heirs of the testator were identical. The word "heirs," as used by the testator, meant all persons who might take by inheritance from the life tenants at their decease. *Flint* v. *Steadman,* 36 Vt. 210.

The letters issued by the court to Blanchard recite the clause in the will creating the trust, and direct the trustee to take charge of the trust estate, and manage and control it according to law and the will of the testator. They further direct him to make and return an inventory of all the real estate, and of all goods, chattels, rights, and credits belonging to him as trustee which should come to his possession or knowledge, and to manage and dispose of all such estate and effects, and faithfully discharge the trust in relation to the same. With these

letters was a personal letter from the judge to the trustee, the first paragraph of which reads:

"Enclosed find trustee letters in the Mitchell estate. I am convinced, by reading the will, that twenty acres was all that he intended to include, and that, therefore, if you take a deed back of the buildings and twenty acres of land, you get all the trust property."

It is apparent that the judge, by his unofficial letter, only advised the trustee as to what land was included in the trust,— whether more than the twenty acres,—for he says, "I am convinced, by reading the will," etc. There is no intimation that he knew of the trust fund, or of the situation of the estate beyond what the will disclosed. There is nothing in the report to show that the trustee could not have collected the trust funds of the persons holding them. It is found that he knew that Cabot and Mitchell held them, but that he did not know the terms or conditions under which they held them except by what is stated in the deed to him; that he did not examine the records, though all the deeds referred to were recorded in the town where he resided; that he did not understand that the various conveyances related to his trust; that he understood it was his duty to obtain a deed of the homestead and hold the same as trustee, and did not suppose he had anything to do with the trust funds.

If the trustee had had no information upon the subject of the trust other than what the will contained, he might well have construed both the letter of trusteeship and the private letter to limit the trust to the homestead; but the deed which he received a short time after his appointment apprised him of the existence of the trust fund.

The appellants claimed that there was a conspiracy by Mitchell, Cabot, and the trustee, by which the latter should take the homestead, which is found to have been of the value of $500

when the trustee was appointed, and release the $1,000 trust fund; but the commissioner found no evidence of conspiracy, but did find that the trustee acted in perfect good faith, intending faithfully to carry out the instructions contained in the letters granted to him by the Probate Court and in the personal letter from the judge which accompanied them.

The case is: the homestead was devised to Charles and Minerva during their lives, remainder to their heirs. They undertook to convey the fee to Henry Mitchell, but the legal effect of the deed was to convey their life estate only. In consideration of the conveyance a fund was paid by the purchaser to certain persons for their benefit. The fund fairly represented the value of the land at the time of the conveyance. The annual income was paid to the life tenants, or for their benefit, for about twenty-four years, when a trustee was appointed by the Probate Court. At whose instance the appointment was made does not appear, and it is not material, but it must have been made under V. S. 2613, which authorizes such an appointment when the use of property, real or personal, descends to a person for life or for years. Mitchell conveyed the land to the trustee, in consideration of which the trustee undertook to release the fund.

The first question is whether the fund or the land is the subject of the trust.

The life tenants might have kept the homestead and enjoyed the rents and profits themselves, in which case they would have occupied it as *quasi* trustees for the remainder-men and would have been bound to maintain it in reasonably good condition for them. The life tenants chose to sell and convey their life estate, as they lawfully might do. If they had collected the consideration paid for it, the trustee, when appointed, would have had no business with the money; and the legal

*status* is not different by reason of the money being placed in the hands of agents or trustees for their use. No trust attached to the consideration received for the life estate. It was not the fund but the land that passed to the remainder-men. The life tenants nor their assigns required a trustee to secure the enjoyment of their estate; neither could a trustee interfere with the lawful use of it by the life tenants or their assigns. The trustee could only intervene for the purpose of preserving the inheritance. Indeed, the only occasion for a trusteeship was the limitation over, the absolute life estate being vested in the first takers, for them to keep and enjoy, or convey away, at their option. The trust was in the land, and the trustee was for those who were to take the inheritance. Perry on Trusts, §§ 329, 540; *Leake* v. *Watson*, 58 Conn. 332, 20 Atl. 343; 8 L. R. A. 666, 18 Am. St. Rep. 270; 3 Jarm. on Wills, 56, *et seq*.

To illustrate: If a trustee had been appointed by the will, his duty would have been to permit the life tenants, or their assigns, to enjoy the rents and profits and protect the land from waste. He could have interfered no further than was necessary to preserve the rights of the remainder-men. The life estate, the income from it, and the consideration paid for it when sold, belonged to the life tenants.

It is true that the Probate Court may, under V. S. 2617, authorize or require a trustee to sell all or a part of the land and re-invest the proceeds, but no such occasion arose in this case.

For anything that appears there was no occasion for this trustee to take the title to the land, for the life tenants had long before disposed of their interest, and the title of the remainder-men could not be divested without their consent.

It was said in the opinion in *Mitchell* v. *Blanchard*, 72 Vt. 85, 47 Atl. 98, which was heard upon demurrer to the bill, that the law stamped the avails of the sale with the same trust that

the will imposed upon the land; but this was upon the supposition that the *fee* passed by the deed.

If it is true, as the appellants contend, that there was a scheme by which a deed of the land was given to the trustee for a wrongful discharge of the depositaries of the fund from their liability to pay it over, neither the life tenants nor the remainder-men were harmed by it, and the trustee, at least, acted in good faith.

If Blanchard is liable upon any ground it is as trustee *de son tort* for his attempt to release Mitchell and Adams from payment of the fund.  The rule now is, in respect to deceased persons' estates, that a party intermeddling and doing acts which an executor or administrator alone may do will make himself liable as executor of his own wrong.  Schoul. Executors (3rd Ed.), § 186; 11 Am. & Eng. Ency. (2d Ed.), 1342. The same rule of liability seems to apply to trustees.  1 Perry on Trusts, § 245; *Bailey* v. *Bailey,* 67 Vt. 494, 32 Atl. 470, 48 Am. St. Rep. 826.  Hill on Trustees, 173, aptly defines trustees *de son tort* as those who of their own authority enter into the possession or assume the management of property which belongs beneficially to others.  But all the authorities agree that the intermeddling must be with the property of the estate; this is expressly held *In Re Barney,* 2 Ch. (1892) 265.  Some instances are cited from the old English books in Schouler, § 186, to show that the slightest misappropriation of the property of an estate formerly constituted one an executor *de son tort;* as taking a bible or a bedstead, disposing of or appropriating goods to one's own debt or legacy; living in the house and carrying on the trade of the deceased, paying debts out of the money of the estate; collecting and giving acquittances for debts, were all acts of tortious intermeddling; and even if the widow milked the cows, or took more apparel than she was entitled to she became an executor *de son tort;* but it was solemnly

questioned whether milking the cows was tortious, as this was necessary for the health of the animals and·to save the milk, and it might benefit the estate.    See Williams Exrs. 259.

In this case Blanchard was not a trustee of his own wrong, for the fund with which he intermeddled did not belong to the trust estate.    His act was nugatory, and in nowise changed the relation of Charles and Minerva to the fund.

As Blanchard recovered the title to the land, and holds it for the life tenants, nothing in this opinion is to be construed as making against their right to apply for the income of the land, if they so elect.

*Judgment of the County Court reversed, and judgment that the trustee, Fred W. Blanchard, is not chargeable with the two funds of $500 each that went into the hands of Lyman F. Cabot and Henry E. Mitchell, respectively; judgment that said trustee is chargeable with the sum of $61.32, balance in his hands June 13, 1898, as found by the commissioner, with interest; that the trustee recover his costs in this court; that neither party have costs in the County Court.    Judgment to be certified to the Probate Court.*