**HARTFORD NATIONAL BANK & TRUST COMPANY,**
Plaintiff-Appellant,

v.

**WESTCHESTER FEDERAL SAVINGS & LOAN ASSOCIATION,**
Defendant-Appellee.

**No. 896, Docket 77–7007.**

United States Court of Appeals,
Second Circuit.

Argued April 29, 1977.
Decided May 31, 1977.

---

William M. Ivler, Stamford, Conn., for plaintiff-appellant.

Victor N. Pacor, New Rochelle, N.Y., for defendant-appellee.

Before MANSFIELD, Circuit Judge, and SMITH * and PALMIERI,** District Judges.

RUSSELL E. SMITH, District Judge:

Hyde Park Company (Hyde Park), a limited partnership, owned an apartment house

---

* Chief Judge of the United States District Court for the District of Montana, sitting by designation.

** Of the United States District Court for the Southern District of New York, sitting by designation.

in Connecticut. Herbert Stoll was the general partner. In May of 1971 Stoll sought to borrow from appellant, Hartford National Bank & Trust Company, a national bank with its principal place of business in Connecticut (Hartford). He offered to Hartford as security for the loan a pledge of an account which Hyde Park carried in the Westchester Federal Savings and Loan Association of New Rochelle, New York (Westchester). Stoll exhibited to Hartford a savings account pass book showing a balance of over $38,000.00 in the name of "Hyde Park Company, c/o Herbert Stoll." The pass book contained nothing indicating that the account was a fiduciary account or was in any way restricted. Stoll executed a pledge agreement, describing the savings account, and an uncompleted withdrawal order. Before making the loan Hartford mailed to Westchester the pledge, together with a "Notice of Pledge," and asked Westchester to sign a "Receipt of Notice." Westchester executed the "Receipt of Notice" which read in part:

> Westchester Federal Savings and Loan Association acknowledges that a copy of the above order for transfer has been filed with it. The copy of signature(s) as shown above appears to compare correctly with signature(s) on file with us. The present balance in said account is $38,265.00.

A covering letter read:

> I am returning herewith the receipt of the Notice of Pledge of the above savings account consisting of security rents under leases.

Hartford then loaned Stoll $35,000.00. Stoll defaulted. Hartford tried to collect the pledged funds. Westchester refused to pay on the ground that the funds were fiduciary funds. Hartford then filed this action claiming title to the pledged funds.[1] The

---

1. The complaint contains no suggestion of any claim based on misrepresentation.

trial court, after a hearing held that the account was a fiduciary account and that Hartford had knowledge of the fiduciary nature of the account and could not recover.

The proof of the nature of the savings account was very scanty and depended upon two exhibits, admitted as business entries of Westchester—one a signature card, and the other a ledger sheet. The signature card bears the printed words "As landlord with security rents of tenants under leases." These words are underlined in ink. The ledger sheet bears the words "Watch," "Rent Security Account," "Countersignature of Mortgage Dept. Required," and "No Withdrawals." [2]

The record does not show what contractual obligations were owed by Hyde Park to its tenants at the time the account was created; it does not show what tenants, if any, made rent security deposits with Hyde Park, nor which of the deposits made had been repaid by Hyde Park. The rent deposits did not flow in and out of the savings account. A deposit in one lump sum was made in April 1971 and, except for interest credits, no deposits or withdrawals were made between then and July of 1974. If the relationships between Hyde Park and its tenants are recorded, those records are on Hyde Park's books, which are not in evidence here.

■ Hyde Park could not, to the extent that this account was fiduciary in nature, use it to secure a personal loan, and certainly as between Hartford, which had the notice, and the tenants the equitable title of the tenants making the rent deposits is superior to that of Hartford. *Leake v. Watson*, 58 Conn. 332, 20 A. 343 (1889); Restatement (Second) of Trusts § 288.

■ Conversely, however, if Hyde Park has in one way or another paid to the tenants the amounts of their rental deposits, then of course, the trust is discharged to the extent of those payments, and Hartford, as assignee of Hyde Park, is entitled to them. In short, it cannot be determined from the record what portion, if any, of the savings account is required to secure rent deposits made by tenants.

■ It is our opinion that Westchester, in light of the dealings here, should not have a windfall [3] of the whole or that portion of the savings account which is not in fact obligated to the Hyde Park tenants.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent herewith.[4] On remand, the parties may make such alignment of the parties as may be proper. Each party shall bear its own costs.

---

**2.** At the time of trial, Westchester took the position that it was a stakeholder and had no independent claim to the funds. In its brief on appeal, Westchester indicated that the savings account was opened in connection with a loan of $2,300,000.00 made by Westchester and secured by a mortgage on the Hyde Park Apartments. In oral argument it was suggested by counsel for Westchester that Westchester might have an interest in the rent security account by reason of the terms of the mortgage.

**3.** If there were nothing but the claims of the tenants, escheat laws might prevent a windfall, but Westchester's now suggested claim under its mortgage might be asserted to defeat an escheat, although such a claim would not be sufficient to defeat the plaintiff here.

**4.** It seems inconceivable that the parties should have tried this case involving claims of a trust without having joined either the trustee or the beneficiaries of the trust. We have not considered the problems created by Fed.R.Civ.P. 19.